**United States District Court**
For the Northern District of California

1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                   NORTHERN DISTRICT OF CALIFORNIA

7

8    MATSUSHITA ELECTRIC INDUSTRIAL          Case No. C-05-3148 MMC (JCS)
     CO., LTD.,
9                                            **ORDER GRANTING IN PART AND**
                                             **DENYING IN PART PLAINTIFF'S MOTION**
10              Plaintiff(s),                **FOR LEAVE TO FILE MOTION FOR**
                                             **RECONSIDERATION OF THE COURT'S**
11        v.                                 **ORDERS RE SETTLEMENT**
                                             **NEGOTIATION DOCUMENTS, DENYING**
12   MEDIATEK, INC., ET AL.,                 **MOTION FOR RECONSIDERATION, AND**
                                             **DENYING MOTION FOR STAY**
13              Defendant(s).                **[Docket Nos. 565, 572)]**
     _____/
14

15        Plaintiff/Counterclaim Defendant, Matsushita Electric Industrial Co., Ltd., and Counterclaim

16   Defendant, Panasonic Corporation of North America (referred to collectively as "Plaintiff") have

17   filed a Motion for Leave to File a Motion for Reconsideration of the Court's Orders Re Settlement

18   Negotiation Documents (the "Motion for Leave") [Docket Nos. 565 (redacted version) and 572

19   (sealed version)].  As set forth below, that Motion is GRANTED IN PART and DENIED IN PART.

20   Further, the Court treats the papers submitted in support of the Motion for Leave as a Motion for

21   Reconsideration.  The Motion for Reconsideration is DENIED.  The Court finds that both Motions

22   are suitable for determination without oral argument, pursuant to Civil Local Rule 7-1(b).

23   **I.       BACKGROUND**

24        On March 9, 2007, as ordered by the Court, the parties filed a Joint Discovery Letter

25   regarding various issues the parties believed the Court should decide, and other issues which the

26   parties had resolved.  The Court treated the Joint Letter as a "Motion to Compel."  In the Motion to

27   Compel, the parties set forth their respective positions, both factually and legally, with respect to

28   each of the contested issues.  Defendants MediaTek, Inc., OPPO Digital, Inc., and MSI Computer

**United States District Court**
For the Northern District of California

1    Corp. sought, *inter alia,* documents and testimony related to the licensing of, and the negotiations

2    regarding the licensing of, the patents-in-suit.  Motion to Compel at 7.  Defendants argued that these

3    documents are relevant based on several theories.  First, during licensing negotiations, one of the

4    prospective licensees may have raised the invalidity of the patents-in-suit, and may have pointed to

5    prior art in support of those invalidity arguments.  Motion to Compel at 6.  As a result, Defendants

6    asserted, it is reasonably likely the discovery of licensing negotiation documents may lead to the

7    discovery of admissible evidence concerning invalidity.  Defendants also argued that production of

8    these materials may lead to the discovery of admissible evidence on the royalty rate that should be

9    applied to determine damages in this case and may also lead to evidence regarding theories of non-

10   infringement.

11           Plaintiff objected.  Insofar as is relevant to the instant application, Plaintiff argued that a

12   "federal settlement privilege . . . shields from discovery any communication created in the context of

13   settlement negotiations."  Motion to Compel at 8.

14           On March 13 and March 15, 2007, the Court denied the Motion to Compel and overruled the

15   objection regarding the "federal settlement privilege."  Objections followed, which Judge Chesney

16   denied on March 21, 2007, without prejudice to filing a motion for leave to file a motion for

17   reconsideration before the undersigned.  Plaintiff filed the Motion for Leave on March 26, 2007.

18   **II.     THE MOTION FOR LEAVE**

19           The Motion for Leave is premised on Local Rule 7-9(b)(2).  Motion for Leave at 7.  That

20   Local Rule provides that the "moving party must specifically show . . . the emergence of new

21   material facts or a change of law occurring after the time of such order. . . ."  In support of the

22   Motion for Leave, Plaintiff cites to only a single new event: the Ninth Circuit's decision in *In re*

23   *Napster Copyright Litig.*, Nos. 06-15886, 06-72515, 2007 WL 754748 (9th Cir. March 14, 2007).

24   That decision was filed on March 14, 2007, after this Court's original decision on March 13, 2007.

25   Accordingly, to the extent that the Motion for Leave is premised on the existence of new law

26   decided after this Court's decision, the Motion is GRANTED, and the Motion for Leave is deemed

27   to be a Motion for Reconsideration.

28

United States District Court
For the Northern District of California

On the other hand, the Motion for Leave also raised many arguments other than those premised on *Napster*. For example, Plaintiff argues, *inter alia*, that the settlement documents in question are not reasonably calculated to lead to the discovery of admissible evidence, and that Defendants' request for production of these documents was untimely and predicated on false representations. None of those events occurred after the Court's decision on the Motion to Compel and should have been raised with the Court in the Joint Letter. Accordingly, other than as specifically granted above, the Motion for Leave is DENIED.

III.     **THE MOTION FOR RECONSIDERATION**

    A.     **THE *NAPSTER* DECISION IS NOT APPLICABLE TO THE QUESTION BEFORE THE COURT**

In *Napster*, the Ninth Circuit faced two questions relating to the crime fraud exception to the attorney-client privilege. First, in a civil case where outright disclosure is requested under the crime fraud exception, does a party seeking to preserve the attorney-client privilege have the right to introduce counterveiling evidence to rebut the evidence introduced by the party seeking disclosure? *Id*. at 10. Second, what is the burden of proof "for the party seeking to establish the crime fraud exception [to the attorney-client privilege]." *Id*.

*Napster* is not applicable to the case at bar. In *Napster*, the question of whether or not the privilege (or the exception to the privilege) existed as a matter of law was not at issue. The sole question was the procedure and quantum of proof necessary to prove an exception to the attorney-client privilege. As discussed below, the Court has concluded that the federal settlement privilege proffered by Defendants does not exist. As a result, *Napster*'s mandate that courts consider evidence from both sides before deciding whether or not certain materials fall within an existing privilege is not applicable to this case. Accordingly, while the Court has granted leave to reconsider the matter in light of *Napster*, the Motion for Reconsideration is DENIED.[1]

---

[1] While the Motion for Reconsideration is denied on this basis, the Court also takes this opportunity to set forth in the section that follows the basis for its conclusion in granting the Motion to Compel that a federal settlement privilege does not exist as a matter of law.

**United States District Court**
For the Northern District of California

**B.   FEDERAL RULES OF EVIDENCE 501 AND 408 DO NOT CREATE A FEDERAL SETTLEMENT PRIVILEGE**

Federal Rule of Civil Procedure 26 permits discovery "regarding any matter, not privileged, that is relevant to a claim or defense of any party. . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to the lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  In the Motion to Compel, the Court concluded that the discovery sought was reasonably calculated to lead to the discovery of admissible evidence. Accordingly, these materials are discoverable so long as they are not privileged.  Neither Rule 408 nor Rule 501 creates a federal settlement privilege.

**1.   Rule 408 Does Not Prohibit The Disclosure Of Compromise Negotiations On Its Face**

In order to dispel the notion that there is a federal settlement privilege, one need look no further than the language of Federal Rule of Evidence 408:

**Compromise and Offers to Compromise**

> (a)  Prohibited uses. — Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:
>> (1)  furnishing or offering or promising to furnish – or accepting or offering or promising to accept – a valuable consideration in compromising or attempting to compromise the claim; and
>> (2)  conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.
> (b)  Permitted uses.— This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution.

Fed. R. Evid. 408.

On its face, Federal Rule of Evidence 408 is not a discovery rule.  It only limits the admissibility of some, but not all, evidence of events that occur during the course of settlement negotiations.  Moreover, Rule 408 provides for the **admissibility** of evidence relating to settlement negotiations for specific purposes.  *See* Fed. R. Evid. 408(b) (permitting the introduction of evidence

1   of compromise and offers to compromise to prove a witness's bias or prejudice, negate a contention

2   of undue delay, or to prove an effort to obstruct a criminal investigation).  The only prohibited use of

3   such evidence is to prove or disprove liability or the amount of a claim "or to impeach through a

4   prior inconsistent statement or contradiction." *Id.* at 408(a).

5         The inescapable conclusion is that a privilege against **disclosure** cannot be found in Rule

6   408.  To the contrary, because the Rule anticipates that settlement negotiations may be admissible, a

7   privilege against their discovery would be inconsistent with Rule 26.

8

               **2.**      **Under Rule 501, No Novel Privilege Applying to**

9                         **Settlement Discussions Can Be Implied From Rule 408**

10         Because it is obvious that Rule 408 permits, rather than forbids, the disclosure of

11   compromise negotiations, courts and parties that have sought to establish a "federal settlement

12   privilege" have relied on the sweeping language of Federal Rule of Evidence 501:

13            Except as otherwise required by the Constitution of the United
        States or provided by Act of Congress or in rules prescribed by the

14         Supreme Court pursuant to statutory authority, the privilege of a
        witness, person, government, State, or political subdivision thereof

15         shall be governed by the principles of the common law as they may be
        interpreted by the courts of the United States in the light of reason and

16         experience.  However, in civil actions and proceedings, with respect to
        an element of a claim or defense as to which State law supplies the

17         rule of decision, the privilege of a witness, person, government, State,
        or political subdivision thereof shall be determined in accordance with

18         State law.

19   Fed. R. Evid. 501.

20         Rule 501 permits the federal courts to define new privileges in light of "reason and

21   experience."  However, the Supreme Court has repeatedly cautioned that this right to fashion new

22   privileges should be used with great restraint.  The general rule is that the public has "a right to

23   every man's evidence" and that "any exemptions which may exist are distinctly exceptional, being

24   so many derogations from a positive general rule." *Jaffe v. Redmond*, 518 U.S. 1, 9 (1996) (citing

25   *United States v. Bryan*, 339 U.S. 323, 331 (1950)).  *See also Univ. of Penn. v. EEOC*, 493 U.S. 182,

26   189 (1890) (the Supreme Court is "disinclined to exercise [Rule 501's] authority expansively").

27

28

United States District Court

For the Northern District of California

The Supreme Court has, in recent years, identified a number of considerations that should guide the decision whether or not to imply a new privilege under Rule 501, which this Court has taken into account:

(1)  Is there a significant public and private interest supporting the recognition of the privilege? *Jaffe*, 518 U.S. at 11.

(2)  Is the likely "evidentiary benefit that [will] result from the denial of the privilege [] modest"?  *Id*.

(3)  Is there a consensus among the states as to the existence of the new privilege?  *Id*. at 12-13.

(4)  Has Congress considered the relevant competing concerns itself and acted on the question of whether or not the information should be privileged?  *Univ. of Penn.,* 493 U.S. at 189.

(5)  Is there an historical and statutory basis for the new privilege?  *Id*. at 195.

(6)  Is the proposed privilege on the list of privileges that was proposed by the Judicial Conference in 1973?  *United States v. Gillock*, 445 U.S. 360, 367-68 (1980).[2]

It is worth noting that, with and without a detailed analysis of the issue, courts have reached widely divergent conclusions about whether or not a federal settlement privilege exists.  The Sixth Circuit approved the application of a federal settlement privilege in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003).  *See also Cook v. Yellow Freight Sys., Inc.*, 132 F.R.D. 548 (E.D. Cal. 1990); *Allen County v. Riley Indus., Inc.*, 197 F.R.D. 352, 353 (N.D. Ohio 2000).  Many courts have rejected the existence of a privilege.  *In re Subpoena Issued to Commodity Futures Trading Comm'n*, 370 F. Supp. 2d 201 (D. D.C. 2005); *Computer Assocs. Int'l, Inc. v. Am. Fundware, Inc.*, 831 F. Supp. 1516, 1531 (D. Colo. 1993) (Rule 408 of the Federal Rules of Evidence is "not a broad discovery privilege"); *NAACP Legal Defense and Educ. Fund, Inc. v.*

---

[2]  Applying this analysis, courts have declined to recognize many privileges, including the identity of reporters' confidential sources, child abuse records, parent-child communications, academic peer review records, corporate ombudsman records, unemployment hearings, and communications between an insurer and an insured. *See In re Subpoena Issued to Commodity Futures Trading Comm'n*, 370 F. Supp. 2d 201, 208 n.8 (D. D.C. 2005) (listing proposed privileges rejected under Fed. R. Evid. 501).

**United States District Court**

For the Northern District of California

1    *The United States Dep't of Justice*, 612 F. Supp. 1143, 1146 (D. D.C. 1985) (same).  *See also Alcan*

2    *Int'l Ltd. v. S.A. De Mfg. Co.*, 179 F.R.D. 403, 405 (W.D.N.Y. 1998) (noting that Rule 408 does not

3    limit the discovery of evidence); *In re Gen. Motors Engine Interchange Litig.*, 594 F. 2d 1106, 1124

4    (7th Cir. 1979) (finding "no convincing basis" for the proposition that "the conduct of settlement

5    negotiations is protected from examination by some form of privilege"); *Primetime 24 Joint Venture*

6    *v. Echostar Commc'ns Corp.*, No. 98Civ.6738, 2000 WL 97680 at *4 n.5 (S.D.N.Y. Jan. 28, 2000)

7    ("[W]e agree with defendants' observation that Fed. R. Evid. 408 does not create a settlement

8    privilege.").  Some courts have taken a middle ground and held that settlement negotiation materials

9    may not be disclosed absent a showing greater than that required for ordinary discovery under Rule

10   26.  *See, e.g., Bottaro v. Hatton Assocs.*, 96 F.R.D. 158, 160 (E.D.N.Y. 1982) (requiring a

11   "particularized showing").

12          Most of these cases, however, have not conducted the detailed analysis required for the

13   creation of a new federal privilege under the *Jaffe* and *Univ. of Penn.* decisions.  The most thorough

14   analysis of the subject was conducted in *In re Subpoena Issued to Commodity Futures Trading*

15   *Comm'n* in 2005.  *In re Subpoena Issued to Commodity Futures Trading Comm'n*, 370 F. Supp. 2d

16   201 (D. D.C. 2005).  In *In re Subpoena*, a subpoena had been served on the Commodity Futures

17   Trading Commission ("CFTC") by an energy consumer who had sued an energy company for its

18   alleged manipulation of the energy market.  *Id*. at 202.  The energy company sought to quash the

19   subpoena, which would otherwise have required the production of, *inter alia*, settlement negotiation

20   documents.  *Id*. at 203-04.  In a ruling directly applicable to the question before this Court, Judge

21   Bates conducted an exhaustive analysis under *Jaffe* and the *Univ. of Penn.*, and concluded that a

22   federal settlement privilege does not exist.  *Id*. at 208-09.

23          First, the court noted that while there is a public policy of promoting settlement disputes

24   outside the judicial process, it was far from clear that a federal settlement privilege would result in

25   an increased likelihood of settlements so substantial that it would justify an exception to the

26   production of evidence in support of the truth-finding process.  *Id*. at 212.  This argument is

27   buttressed by the fact that there is no evidence that the method taken by Rule 408 to protect

28   settlement negotiations – limiting the admissibility of settlement discussions without limiting their

1  disclosure in discovery – is insufficient to promote public policy of settling disputes outside the

2  judicial process.

3      Second, the court in *In re Subpoena* found that there is no "consensus" among the states as to

4  the existence of a settlement privilege. *Id*. at 210.  Unlike the situation in *Jaffe,* where "all 50 states

5  and the District of Columbia" had enacted into law a form of psychotherapist privilege, there is no

6  such foundation for a "settlement privilege" under state law.  *Jaffe*, 518 U.S. 1.

7      Finally, it is clear that when Congress approved Rule 408 to promote settlements, it chose to

8  do so by limiting admissibility – and not by limiting discovery.  *See In re Subpoena*, 370 F. Supp. 2d

9  at 211.  Indeed, it specifically provided that settlement negotiations can be admitted for certain

10  purposes.  Accordingly, any federal settlement privilege is contrary to the enactment approved by

11  the legislature.

12      The only major case to conduct the analysis required by the *Jaffe* and *Univ. of Penn.*

13  decisions that found in favor of the existence of a settlement privilege is the Sixth Circuit's decision

14  in *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003).  To the

15  extent that the *Goodyear* decision is at variance with the analysis described above, and the court's

16  interpretation of Rules 501 and 408 in *In re Subpoena*, this Court disagrees with the *Goodyear*

17  decision.  First, the court in *Goodyear* did not analyze each of the important factors identified by the

18  United States Supreme Court in order to determine whether a new privilege should be implied under

19  Rule 501.  Second, the court seemed persuaded that many of the "facts" that might be discovered

20  from the examination of settlement negotiations would not be reliable.  *See Goodyear*, 332 F.3d at

21  981.  ("The discovery of these sort of 'facts' would be highly misleading if allowed to be used for

22  purposes other than settlement.")  The court did not even analyze Congress's solution to this

23  problem: permitting the admissibility of settlement discussions only in very limited circumstances.

24  Nor did the court address the fact that Congress had chosen, by its approval of Federal Rule of

25  Evidence 408, to allow settlement discussions to be admitted in certain circumstances.  The

26  *Goodyear* court also did not analyze whether or not creation of this new privilege had a foothold in a

27  consensus, or even a majority, of state jurisdictions.

28

1    Accordingly, this Court concludes that a federal settlement privilege should not be implied

2  under Rule 501 of the Federal Rules of Evidence.

3  **IV.    CONCLUSION**

4    For all of the foregoing reasons, the Motion for Leave to File a Motion for Reconsideration is

5  GRANTED IN PART and DENIED IN PART, and the Motion for Reconsideration is DENIED.

6  The Motion for a Stay is DENIED.

7    IT IS SO ORDERED.

8

9  Dated: March 30, 2007

10    _____
     JOSEPH C. SPERO

11    United States Magistrate Judge

**United States District Court**
For the Northern District of California